# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Jaemon Lee, | Case No.: 2:21-cv-01870-JAD-DJA |
| Plaintiff | **Order Granting Motion to Compel Arbitration of Claims against American Homes 4 Rent, Granting in Part and Denying in Part Motion to Dismiss, Denying Motions for Injunctive Relief, and Granting Motion to Lift Discovery Stay** |
| v. | |
| American Homes 4 Rent, L.P. and Boyd Gaming Corporation, | [ECF Nos. 6, 20, 29, 30, 46] |
| Defendants | |

Jaemon Lee sues his former employers, Boyd Gaming Corporation and American Homes 4 Rent (AH4R), alleging that AH4R fired him after Boyd breached a settlement agreement that restricts what Boyd may disclose to Lee's prospective employers by telling AH4R that Lee had filed discrimination and retaliation claims against Boyd. AH4R moves to compel arbitration of the claims against it based on Lee's arbitration agreement with the company. Boyd moves to dismiss most of the claims against it, arguing that some are insufficiently pled and others are barred by the settlement agreement. Lee opposes these requests and moves for an expedited trial and to lift the discovery stay that was entered last December.

Because Lee signed an arbitration agreement with AH4R, I grant the motion to compel arbitration and dismiss Lee's claims against AH4R. I also grant in part Boyd's motion to dismiss Lee's claims for discrimination, intentional and negligent infliction of emotional distress, bad faith, and interference with prospective business relations, but I do so with instructions and leave to amend by June 30, 2022. Finally, I deny Lee's request for an expedited trial but grant his motion to lift the discovery stay and give Boyd and Lee until June 14, 2022, to file a stipulation to reset their early-neutral-evaluation session.

# Background[1]

Jaemon Lee is a transgender individual who identifies as male.[2]  He alleges that he filed charges of discrimination and retaliation against Boyd with the Nevada Equal Rights Commission (NERC),[3] which resulted in a negotiated settlement agreement in mid-2020.[4]  As part of that agreement, Boyd agreed that any future job references to Lee's potential employers would "be limited only to date of hire, number of wages, position held, and [the] date employment ended,"[5] and Boyd could "[n]ot to divulge the terms and conditions of [the settlement] nor the allegations of this charge to any third party."[6]

After he left Boyd, Lee removed the company from his LinkedIn profile on the advice of a NERC employee, who was "prompted by the suspicion that Boyd . . . had been 'disparaging' [Lee] to prospective employers since [Lee's] charge against Boyd . . . had been resolved."[7]  Lee then applied for an "Enterprise Architect" position with AH4R,[8] was interviewed for the position, and hired on February 21, 2020.[9]  A few days later, one of AH4R's recruiters asked Lee if he had worked at Boyd, stating that she learned of his employment through his LinkedIn profile.[10]  Lee "knew that [claim] was not true" because he had removed that entry from his

---

[1] These facts are summarized from Lee's complaint (ECF No. 1) and are not intended as findings of fact.

[2] ECF No. 1 at ¶ 86.

[3] *Id.* at ¶ 66.

[4] *Id.* at ¶ 67.

[5] *Id.* at ¶ 68.

[6] *Id.* at ¶ 69.

[7] *Id.* at ¶ 23–24.

[8] *Id.* at ¶¶ 16–18.

[9] *Id.* at ¶ 20.

[10] *Id.* at ¶ 21.

resume months earlier.[11]  But at the recruiter's request, Lee provided her and his AH4R manager

Phillip Irby with the email addresses and phone numbers of Nathan Hirschi and Johan

Mortenson, his employers at Boyd.[12]  Lee was never told whether the recruiter spoke to Hirschi

or Mortenson.[13]

Lee started work at AH4R on March 9, 2020,[14] but he was fired five days later.[15]

AH4R's human-resources department told Lee that the company "had received complaints from

several people about him" but would not provide any further details.[16]  Lee alleges that he "had

no problems or other unpleasant interactions with any person" during his five-day tenure.[17]  He

believes that Hirschi told Irby that Lee "was transgender and . . . made a complaint against

[Boyd] for sex discrimination and retaliation."[18]  Lee alleges that Hirschi and Irby were friends

and had previously exchanged information that led to Boyd rescinding a job offer to a

prospective employee while Lee was employed there.[19]

Lee filed this complaint in October 2021, alleging that Boyd's disclosure of his

transgender status and NERC claims, Boyd's conduct while Lee was employed there, and

AH4R's decision to fire him violate Title VII and Nevada Revised Statute (NRS) 613.330's

---

[11] *Id.* at ¶¶ 22, 23–24.

[12] *Id.* at ¶ 36.

[13] *Id.* at ¶ 37.

[14] *Id.* at ¶ 39.

[15] *Id.* at ¶ 40.

[16] *Id.* at ¶¶ 41–46.

[17] *Id.* at ¶¶ 50–51.

[18] *Id.* at ¶¶ 52, 56.

[19] *Id.* at ¶¶ 57–65.

1    prohibition on discrimination based on sex and gender identity.[20]  He also brings retaliation

2    claims under federal and Nevada law against both companies.  And against Boyd only, Lee

3    asserts claims for breach of his settlement agreement, breach of the covenant of good faith and

4    fair dealing, "intentional/negligent infliction of emotional distress," and interference with

5    prospective business advantage.[21]

**Discussion**

6

7    **I.    AH4R's motion to compel arbitration [ECF No. 6]**

8        AH4R moves to compel arbitration and dismiss this case[22] based on an arbitration

9    agreement that Lee electronically signed during his employment onboarding process.[23]  AH4R

10   argues that the agreement explicitly requires "claims for unlawful discrimination" on the basis of

11   "sex [and] gender identity and expression" to be arbitrated.[24]  It also requires the parties to

12   arbitrate "any disputes about the applicability, scope, enforceability, validity[,] or waiver of this

13   [a]greement."[25]  AH4R therefore argues that the claims against it, including any questions

14   concerning the validity of the arbitration agreement, must be resolved by an arbitrator and that

15   this federal court case against it must be dismissed.[26]  Lee responds that the arbitration

16   agreement is unenforceable because AH4R didn't sufficiently show that he signed the

17

18

---

19   [20] *Id.* at ¶¶ 80–116.

     [21] *Id.* at ¶¶ 117–51.

20
     [22] ECF No. 6.  AH4R filed a corrected image of this motion and its exhibits to comply with
21   Local Rule (L.R.) IA 10-3.  ECF No. 62.  I cite to the corrected version throughout this order.

     [23] ECF No. 62 at 3.
22
     [24] *Id.* at 4; ECF No. 62-6 at 2–3 (AH4R's arbitration agreement).

23   [25] ECF No. 62 at 8; ECF No. 62-6 at 3.

     [26] ECF No. 62.

agreement.[27]  He alternatively argues that his claims against AH4R are "intertwined" with his claims against Boyd and thus, "this matter fails squarely outside of the unenforceable arbitration agreement."[28]  He asks that I stay this case in its entirety if I find that his claims against AH4R must be arbitrated.[29]

### A.      The Federal Arbitration Act (FAA)

The FAA states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy" arising out of the contract or transaction "shall be valid, irrevocable, and enforceable save upon grounds as exist at law or in equity for the revocation of any contract."[30]  It permits any party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition any federal district court for an order compelling arbitration in the manner provided for in the arbitration agreement.[31]  The FAA "establishes a federal policy favoring arbitration, requiring that [courts] rigorously enforce agreements to arbitrate"[32] and provides "that [if a] contract contains an arbitration clause, there is a presumption of arbitrability."[33]  "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates

---

[27] ECF No. 14 at 5.

[28] *Id.* at 5–6.

[29] *Id.* at 7.

[30] 9 U.S.C. § 2.  The parties do not dispute that the FAA governs this arbitration agreement.

[31] *Id.* at § 4.

[32] *Shearson/Am. Exp. Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (cleaned up)).

[33] *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (internal quotation marks omitted).

that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"[34]

### B.   Lee signed the arbitration agreement.

It is "well settled that [if] the [arbitrability] dispute at issue concerns contract formation, the dispute is generally for courts to decide."[35]  "Only when there is no genuine dispute of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."[36]  "[W]hen considering a motion to compel arbitration [that] is opposed on the ground that no agreement to arbitrate has been made between the parties, [the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise."[37]  Because Lee disputes whether he signed the agreement, I must determine whether Lee signed the arbitration agreement before I can compel arbitration under its terms.

Lee contends that he did not "explicitly sign[]" the arbitration agreement because he only electronically input his name to complete the "arbitration agreement" onboarding task, just like he did for all of the other "non-contractual" tasks.[38]  He claims that, because "any signature [was] required to move along the onboarding," he never "affirmatively authoriz[ed]" the

---

[34] *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean v. Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

[35] *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 296 (2010).

[36] *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (finding that, "to require the plaintiffs to arbitrate where they deny that they entered into the contracts would be inconsistent with the first principle of arbitration that a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" (cleaned up)).

[37] *Id.*

[38] ECF No. 14 at 5.  Lee also attests in his motion for injunctive relief that he "never ever signed any arbitration agreement nor saw any such arbitration agreement" with AH4R.  ECF No. 63 at 2.

arbitration agreement.[39]  He also argues that AH4R relies on purely "circumstantial evidence" to show that he signed the agreement.[40]

But AH4R has proven through direct evidence that Lee signed the arbitration agreement. AH4R's human-resources director explains that Lee accessed his onboarding documents "through a secured link that required [him] to input the username and password provided by AH4R."[41]  From there, he had to complete nine required tasks, one of which was signing the arbitration agreement.[42]  AH4R's exhibits show that on February 26, 2020, Lee provided his electronic signature (by inputting his name in a signature field) attesting that he "received and agreed" to the arbitration agreement.[43]  That evidence is not circumstantial—it directly shows that Lee electronically signed the agreement.

Lee's argument that he did not "explicitly sign" the agreement because he merely "input his name as if he was completing the other non-contractual onboarding tasks" is not persuasive.[44]

---

[39] *Id.* at 4.  Lee appears to draw support for his position from NRS 597.995, a Nevada provision requiring that "an agreement [that] includes a provision [that] requires a person to submit to arbitration any dispute arising between the parties to the agreement *must include specific authorization for the provision [that] indicates that the person has affirmatively agreed to the provision.*"  Nev. Rev. Stat. § 597.995(1) (emphasis added).  But even Lee acknowledges that this statute is preempted by the FAA.  ECF No. 14 at 3 ("NRS 597.995, while preempted by the FAA[,] is highly applicable to this matter.");  *see also MMAWC, LLC v. Zion Wood Obi Wan Trust*, 448 P.3d 568, 571 (Nev. 2019) (holding that the FAA preempts NRS 597.995 because "[the specific-authorization requirement] singles out arbitration provisions as suspect and violates the FAA").  So to the extent Lee argues that I should import NRS 597.995's heightened authorization requirements to the FAA, that argument is contrary to law.

[40] ECF No. 14 at 5.

[41] ECF No. 62-3 at 3 (human-resources director's declaration).

[42] *Id.*

[43] ECF No. 62-6 (signed arbitration agreement); ECF No. 62-9 (onboarding page showing Lee's completed tasks); ECF No. 62-10 (transaction manager showing that Lee completed the arbitration-agreement task on February 26, 2020).

[44] ECF No. 14 at 5.

When properly authenticated, electronic signatures have long been accepted by the courts as an equivalent to a handwritten signature.[45]  AH4R has provided sufficient documentation to authenticate Lee's signature on the agreement, and Lee presents no case law supporting his theory that including a task to sign an arbitration agreement along with other onboarding requirements somehow voids or mitigates his electronic agreement to arbitrate.  Because AH4R has sufficiently demonstrated that Lee agreed to arbitrate this dispute, I proceed to the next step of the arbitration analysis.

### C.   The agreement clearly delegates questions of arbitrability to the arbitrator.

The district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[46]  But if the agreement "clearly and unmistakably" delegates to the arbitrator "the question of arbitrability"—i.e., whether the parties agreed to arbitrate the agreement's validity and scope—the court does not consider those questions and instead "leav[es] any challenge to the validity of the [a]greement as a whole for the arbitrator."[47]

Such is the case here.  As AH4R points out, the arbitration agreement delegates to the arbitrator "any disputes about the applicability, scope, enforceability, validity[,] or waiver of this

---

[45] *See, e.g.*, *Mwithiga v. Uber Tech., Inc.*, 376 F.Supp.3d 1052, 1060 (D. Nev. 2019) (finding that plaintiff signed electronic arbitration agreement through the Uber app, pointing to Uber declaration noting that plaintiff was required to sign into the app with a unique username and password and agree to the arbitration contract before using the app); *Gonzales v. Sitel Operating Corp.*, 2020 WL 96900 (D. Nev. Jan. 7, 2020) (finding evidence of employer's onboarding procedure sufficiently demonstrated that plaintiff electronically signed an arbitration agreement); *Jaffey v. Del Taco Rest., Inc.*, 2018 WL 3997261 (D. Nev. Aug. 21, 2018) (finding human-resources declaration and related exhibits sufficient to show that plaintiff electronically signed an arbitration agreement during onboarding).

[46] *Chiron Corp.*, 207 F.3d at 1130.

[47] *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010); *AT&T Techs.*, 475 U.S. at 649.

[a]greement . . . ."[48]  Lee does not deny that this language clearly and unmistakably delegates determinations about the validity and scope of the agreement to the arbitrator.  I thus find that the parties executed an arbitration agreement that delegates questions of arbitrability to the arbitrator, and I grant AH4R's motion to compel arbitration.

### D.   Because Lee's claims against AH4R must be arbitrated, I dismiss the claims against AH4R and deny Lee's request to stay the case.

Lee urges this court to deny AH4R's motion because his claims against AH4R are "intertwined" with those against Boyd, meaning "that AH4R would be required to appear in this matter regardless."[49]  But the FAA does not give the district courts discretion to circumvent an arbitration agreement because a plaintiff brings related claims against another party that is not subject to that agreement.[50]  If the parties agreed to arbitrate, the district court must compel arbitration.

Finally, Lee asks that I stay this entire action pending arbitration if I grant AH4R's motion to compel.  However, Lee recently petitioned this court to lift the discovery stay already in place and set an "urgent jury trial," calling into question whether his earlier request for a stay—made while Lee was still represented by counsel—reflects his current preference.[51]  Regardless, I find that a stay is not warranted here because Lee's claims against AH4R and Boyd are distinct enough that they can proceed on two different tracks at once: arbitration for the

---

[48] ECF No. 62 at 8 (quoting ECF No. 62-6 at 3).

[49] ECF No. 14 at 7.

[50] *See Dean Witter Reynolds*, 407 U.S. at 217 (holding that "the [FAA] requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums").

[51] ECF No. 63 at 1.

claims against AH4R and litigation for the claims against Boyd.  Lee's claims against AH4R concern its decision to fire Lee, while his claims against Boyd concern its breach of a settlement agreement and related discrimination.  Though Boyd and Lee may need to seek discovery from AH4R in this litigation, AH4R need not be a party to this action for them to obtain that discovery.[52]  And dismissing AH4R from this action and allowing Lee's claims against Boyd to progress in their normal course is the most efficient path forward.  So I compel arbitration for Lee's claims against A4HR, dismiss those claims, and proceed to Boyd's motion to dismiss.

## II.    Boyd's motion to dismiss [ECF No. 20]

Federal pleading standards require plaintiffs to plead enough factual detail to "state a claim to relief that is plausible on its face."[53]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; plaintiffs must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory." [54]  The court must accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth, and resolve all factual disputes in the plaintiff's favor.[55]  A complaint that fails to meet this standard must be dismissed.[56]

### A.    Lee's discrimination claim is dismissed with leave to amend.

Lee brings a Title VII and NRS 613.330 discrimination claim against Boyd, alleging that while he was employed there, Boyd "targeted [him] for failing to conform to established gender

---

[52] *See* Fed. R. Civ. P. 45 (subpoenas for third parties).

[53] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[54] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 562 (quotation omitted).

[55] *Iqbal*, 556 U.S. at 678–79.

[56] *Twombly*, 550 U.S. at 570.

standards and norms," "refused to take reasonably adequate steps to prevent discrimination against [him]," and "subject[ed] him to unlawfully disparate, hostile, and otherwise untenable workplace conditions . . . because of his sex and gender identity . . . ."[57]  Boyd argues that this claim is barred by the parties' settlement agreement and, regardless, Lee does not allege facts sufficient to state a discrimination claim against it.

> ### 1.     Because Lee alleges that Boyd first breached the settlement agreement that prohibits him from bringing a discrimination claim, his claim is not barred by the agreement at this motion-to-dismiss stage.

Boyd contends that Lee cannot bring discrimination or retaliation claims based on conduct that occurred prior to August 22, 2019, because he signed a release of those claims as part of his settlement agreement.[58]  But Lee alleges that Boyd breached that agreement in March 2020, when a Boyd manager violated the clause requiring him to limit references to the time period of employment, salary, and position.[59]  The Nevada Supreme Court has recognized that "[w]hen parties exchange promises to perform, one party's material breach of its promise discharges the non-breaching party's duty to perform."[60]  If Lee successfully proves that Boyd breached the contract, he may bring claims that would have otherwise been barred by the agreement.  So at this early stage of proceedings, and in light of the fact that Boyd does not challenge the adequacy of Lee's breach-of-contract allegations, Boyd's argument is premature.

---

[57] ECF No. 1 at ¶¶ 87–89.

[58] ECF No. 20 at 4.

[59] ECF No. 1 at ¶¶ 117–28.

[60] *Cain v. Price*, 415 P.3d 25, 29 (Nev. 2018) (citing Restatement (Second) of Contracts § 237 (Am. L. Inst. 1981)).

### 2.      To proceed with his claim, Lee must allege additional facts demonstrating Boyd's discriminatory actions.

Boyd further argues that, if Lee's discrimination claim is not barred, he still does not allege facts sufficient to state a claim.[61]  Lee alleges only conclusory statements, unsupported by underlying fact, that Boyd targeted Lee for his nonconformance with gender norms, subjected him to hostile work conditions, and discriminated against him based on his sex and gender identity.[62]  Those bare legal conclusions are insufficient to state a claim against Boyd.  Lee does not explain the facts that led him to file a NERC complaint against Boyd or provide details concerning any other actions Boyd took to discriminate against him.  To adequately state a claim, Lee must allege facts showing the actions Boyd took that he contends targeted him or discriminated against him because of his sex and gender identity.  So I dismiss Lee's discrimination claim with leave to amend to add those who-did-what facts.

### 3.      Lee's discrimination claim is not based on post-employment conduct.

Boyd acknowledges that "it appears [Lee] is only trying to litigate issues during his employment under [his discrimination claim]" but argues that, to the extent Lee "is alleging he is entitled to relief based on alleged actions Boyd took post-employment, such claims are also barred."[63]  Lee responds that "Boyd's malicious behaviors from when [he] was employed continued after [he] was no longer employed with the company" and thus that "the same unlawful, discriminatory, and retaliatory behaviors . . . continued from the time he was employed to the day it breached the parties' [a]greement . . . ."[64]

---

[61] ECF No. 20 at 4.

[62] ECF No. 1 at ¶¶ 87–89.

[63] ECF No. 20 at 5.

[64] ECF No. 24 at 6.

Careful review of Lee's complaint, however, reveals no "post-employment" discrimination claim against Boyd.  The allegations, although sparse, are targeted at Boyd's discriminatory actions while Lee worked there.  But to the extent Lee is suggesting that Boyd's discrimination continued past Lee's employment or seeks to amend his complaint to add such allegations, that request must be denied.  In *Burlington Northern and Santa Fe Railway Company v. White*, the Supreme Court held that Title VII's antiretaliation provision is not limited to actions "that are related to employment or occur at the workplace."[65]  In so doing, the Court distinguished the antiretaliation provision from "the substantive [antidiscrimination] provision," which is limited to "discriminatory actions that affect the terms and conditions of employment."[66]  Courts have interpreted *Burlington*'s distinction to mean that, while an employee may bring a *retaliation* claim for post-employment conduct, the same is not true of a *discrimination* claim.[67]  I agree with those courts and conclude that, to prove a Title VII discrimination claim, a plaintiff must demonstrate that an adverse employment action was taken against him, and actions taken after employment has ceased cannot qualify as an adverse

---

[65] *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

[66] *Id.* at 64.

[67] *See Bryant v. Covina-Valley Unified Sch. Dist.*, 2018 WL 6016924, at *3 (C.D. Cal. Jan. 10, 2018) (noting that "the Supreme Court has held that while Title VII's antidiscrimination provisions are limited to 'discriminatory actions that affect the terms and conditions of employment' and are thus not applicable to post-employment discrimination, its antiretaliation provision is not so limited"); *Meadows v. Blue Ridge Comm. Coll.*, 2020 WL 2761037, at *6 (W.D.N.C. May 5, 2020) (reasoning that, under *Burlington*, the post-employment denial of an internal grievance could not "serve at the basis for [plaintiff's] ADA discrimination claim"); *Clancy v. Esper*, 2020 WL 618584, at *9 (D. Kan. Feb. 10, 2020) (rejecting discrimination claim for denial of unemployment benefits, noting that "[p]ost-employment opposition to unemployment benefits is not an adverse employment action because it occurs after employment has ceased").

13

1    employment action.  So I caution Lee that, if he chooses to amend his discrimination claim, he

2    must focus only on actions that Boyd took against him while he was employed there.

3         **B.      Lee's retaliation claim is sufficiently pled.**

4         Lee also alleges that Boyd retaliated against him by disclosing his prior NERC

5    complaints to AH4R.[68]  Boyd does not dispute the sufficiency of that claim, but it argues that,

6    "to the extent [Lee's retaliation claim] includes events prior to the execution of the [settlement

7    agreement], those events should also be barred from consideration" because Lee signed a release

8    of all claims.[69]  The complaint, however, focuses solely on Boyd's disclosure to AH4R, which

9    occurred long after Lee signed the settlement agreement.  So Lee's retaliation claim as alleged

10   does not implicate the settlement agreement.

11        **C.      Lee's good-faith-and-fair-dealing claim is dismissed with leave to amend.**

12        In addition to his breach-of-contract claim, Lee brings a claim for breach of the implied

13   covenant of good faith and fair dealing.  There are two causes of action available to Nevada

14   plaintiffs alleging a breach of this covenant—one sounds in contract law, the other in tort.[70]

15   Lee's complaint does not state a claim for either, but because he may be able to allege facts

16   supporting such claims, I grant him leave to amend.

17        Under Nevada law, a claim for contractual breach of the implied covenant of good faith

18   and fair dealing requires proof that the defendant breached its duty of good faith and fair dealing

19   by acting in a manner unfaithful to the purpose of the contract.[71]  A contractual breach of the

20

---

21   [68] ECF No. 1 at ¶ 109.

22   [69] ECF No. 20 at 5.

     [70] *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991).

23   [71] *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp.*, 808 P.2d at 923).

covenant thus requires the plaintiff to show that the breaching party complied with the express terms of the contract but deliberately and intentionally contravened the intention and spirit of the contract.[72]  But Lee expressly alleges that Boyd did not comply with the contract's terms by "knowingly violating the confidentiality and job reference provisions outlined in" the settlement agreement.[73]  Because Lee's contractual-implied-covenant claim relies on the breach of the agreement's express terms, it does not state a claim, so I dismiss it.  Of course, Lee may plead both breach of contract and contractual breach of the implied covenant as alternative theories of liability if he is able to adequately allege that if Boyd literally complied with the contractual terms, it did not comply with the intention and spirit of the contract.[74]  I therefore grant him leave to amend his contractual-implied-covenant claim because it is not yet clear that amendment would be futile.[75]

Lee also fails to state a claim for tortious breach of the covenant of good faith and fair dealing.  To state that claim under Nevada law, a plaintiff must show the existence of: (1) "an enforceable contract," (2) "a special relationship between the tortfeasor and the tort victim . . . that is[] a relationship of trust and special reliance," and (3) conduct that goes "well beyond the bounds of ordinary liability for breach of contract."[76]  Tort liability for the breach of the implied covenant is limited to "rare and exceptional cases" and only some special relationships qualify.

---

[72] *Hilton Hotels Corp.*, 808 P.2d at 923.

[73] ECF No. 1 at ¶ 131.

[74] *See Jimenez v. GEICO Ins. Co.*, 448 F. Supp. 3d 1108, 1113 (D. Nev. 2020) ("A plaintiff may plead both breach of contract and breach of the implied covenants are alternative theories of liability, but all elements of each cause of action must be properly pleaded.").

[75] *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by amendment.") (cleaned up).

[76] *Martin v. Sears, Roebuck and Co.*, 899 P.2d 551, 555 (Nev. 1995).

1  Tort liability is appropriate where "the party in the superior or entrusted position has engaged

2  in grievous and perfidious misconduct."[78]

3         The Nevada Supreme Court has recognized that the employer-employee relationship can

4  be a special one if "the relationship of the parties and the circumstances of the case" show that

5  the employer would not "be held adequately accountable by mere payment of contract

6  damages."[79]  Though Lee may be able to plead facts to show such a special relationship, he

7  hasn't yet.  In his complaint, he merely states in a conclusory fashion that Boyd "had a duty to

8  act in good faith and fair dealing in performing [its] obligations."[80]  And in his briefing, Lee

9  generally relies on his employment and contractual relationships with Boyd to satisfy the special-

10 relationship element, arguing that he trusted Boyd to "treat him well" as an employee and "honor

11 its promise" under the settlement agreement.[81]  These allegations are insufficient to show that

12 Lee's relationship with Boyd was a special one under Nevada law.  So I dismiss his tortious-

13 breach claim with leave to amend if he can state additional facts to show that he had a special

14 employment relationship with Boyd.

15         **D.      Lee's emotional-distress claims are dismissed with leave to amend.**

16        Lee titles his infliction-of-emotional-distress claim as both an intentional and a negligent

17 one.[82]  Boyd contends that his allegations fail to state a claim under either theory of culpability.

18 To state a claim for intentional infliction of emotional distress (IIED), Lee must show: "(1)

19

20 [77] *K Mart Corp v. Ponsock*, 732 P.2d 1364, 1370 (Nev. 1987).

   [78] *State, Univ. and Comm. Coll. Sys. v. Sutton*, 103 P.3d 8, 19 (Nev. 2004) (cleaned up).

21 [79] *K Mart Corp. v. Ponsock*, 103 Nev. 39, 52, 732 P.2d 1364, 1372 (1987), *abrogated on other
   grounds by Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990).

22 [80] ECF No. 1 at ¶ 130.

23 [81] ECF No. 24 at 7.

   [82] ECF No. 1 at 14.

extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation."[83]   Extreme and outrageous conduct is conduct "outside all possible bounds of decency and [that] is regarded as utterly intolerable in a civilized community."[84]   As the Nevada Supreme Court has long held, "[t]he less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress" to prove an IIED claim.[85]   "A claim of negligent infliction of emotional distress (NIED) requires the plaintiff to show that the defendant acted negligently (i.e.[,] breached a duty owed to plaintiff) and 'either a physical impact . . . or, in the absence of physical impact, proof of serious emotional distress causing physical injury or illness.'"[86]

Boyd contends that the scenario that Lee describes is not extreme and outrageous conduct.  It relies on unpublished and out-of-circuit cases finding that termination of employees and other "personnel management activit[ies]" cannot support an IIED claim.[87]   But while adverse employment actions alone typically do not suffice, bad-faith conduct taken in conjunction with those actions can reach the level of extreme and outrageous conduct.  For example, in *Shoen v. Amerco, Inc.*, the Nevada Supreme Court held that it was a question for a

---

[83] *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1993).

[84] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).

[85] *Id.* at 483 (quoting *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983)).

[86] *Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1109 (D. Nev. 2001) (quoting *Barmettler v. Reno Air., Inc.*, 956 P.2d 1382, 1387 (Nev. 1998)).

[87] ECF No. 20 at 9 (citing *Cohen v. Clark Cty. Sch. Dist.*, 2012 WL 2326721, at *6 (D. Nev. June 19, 2012); *Abbott v. Crown Motor Co.*, 348 F.3d 537, 545 (6th Cir. 2003) (interpreting Ohio law to preclude an IIED claim predicated on an employer's termination of the plaintiff); *Mason v. Capitol Office Sols.*, 2014 WL 4825931, at *5 (D. Md. Sept. 23, 2014) (finding that refusal to provide plaintiff with a positive job reference was not extreme and outrageous conduct under Maryland law)).

1  jury whether the plaintiff's employers were liable for IIED when they cut retirement benefits "for

2  the express reason of causing [him] extreme financial hardship," initiated frivolous lawsuits just

3  to harass him, and verbally threatened him.[88]  So Nevada law recognizes that an IIED claim can

4  arise from adverse employment conduct if it's compounded with other actions, making the entire

5  situation extreme and outrageous.

6          But the conduct Lee describes in his complaint—that Boyd breached the settlement

7  agreement and retaliated against him when it disclosed his prior discrimination claims to

8  AH4R— falls short of extreme and outrageous conduct.  At most, Lee's facts support claims for

9  breach of contract and retaliation, but he does not allege facts supporting the inference that this

10  conduct was "outside all possible bounds of decency."[89]  Indeed, Lee's claim theory is similar to

11  the one asserted in *Barmettler v. Reno Air, Inc.*, in which the Nevada Supreme Court found that

12  an employee failed to establish an IIED or NIED claim based on his employer's failure to keep

13  his alcohol-treatment confidential, as required by employer's own written drug-and-alcohol

14  policy.[90]  But because I am not yet convinced that Lee cannot allege facts to show extreme and

15  outrageous conduct and severe emotional distress, I grant him leave to amend his IIED and

16  NIED claims.

17

18

19

20

21

22

[88] *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995).

23  [89] *Maduike*, 953 P.2d at 26.

[90] *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1384 (Nev. 1998).

### E.   Lee's interference-with-prospective-business-advantage claim is dismissed with leave to amend.

To establish a claim for intentional interference with prospective business advantage, a plaintiff must allege facts demonstrating "(1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct."[91]  Boyd argues that Lee's claim fails at the first factor: because Lee was employed by AH4R, Boyd's alleged actions interfered with an *existing* contractual relationship, not a *prospective* one.[92]  Lee admits that he "signed an employment contract with AH4R" but argues that, because he worked there for just five days and "was still going through the onboarding process," the court "should [] consider[]" the relationship prospective.[93]

But Lee's admission that he did have a valid AH4R contract dooms his prospective-relationship claim, as the facts he alleges show only that Boyd interfered with an existing contract.  To plead a claim for intentional interference with an existing contractual relationship, a plaintiff must show "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage."[94]  Because I dismiss this claim only because Lee has alleged that the relationship it's based on is not a prospective one, I give Lee

---

[91] *In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011) (quoting *Wichinsky v. Mosa*, 847 P.2d 727, 729–30 (Nev. 1993)).

[92] ECF No. 20 at 13.

[93] ECF No. 24 at 10.

[94] *J.J. Indus., LCC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

1 leave to amend his complaint to replace this claim with an intentional-interference-with-

2 contractual-relations claim if he can plead true facts to support one.

3 **III.     Lee is granted leave to amend his complaint consistent with this order.**

4          Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that "[t]he court should

5 freely give leave [to amend a complaint] when justice so requires."[95]   The Ninth Circuit's

6 amendment policy is generous, particularly for pro se plaintiffs like Lee.  It requires a district

7 court to "grant leave to amend even if no request to amend the pleading was made, unless it

8 determines that the pleading could not possibly be cured by the allegation of other facts."[96]  On

9 Lee's behalf, his former counsel requested leave to amend if Boyd's motion to amend were

10 granted.[97]  I grant Lee leave to cure the deficiencies detailed above if he still desires this relief

11 despite having fired his lawyers.

12          Lee is advised that any amended complaint that is filed with the court must be complete

13 in itself without reference to prior filings.  Any allegations, parties, or requests for relief from

14 prior papers that are not carried forward and reasserted in the amended complaint no longer will

15 be before the court and will be deemed abandoned.  So if Lee chooses to amend his

16 discrimination, good-faith-and-fair-dealing, interference-with-prospective-business-relations,

17 IIED, and NIED claims, he must also include his properly pled claims for breach of contract and

18 retaliation in his first-amended complaint.

19

20

21

22 _____

[95] Fed. R. Civ. P. 15(a).

23 [96] *Lacey v. Maricopa Cty.*, 693 F.3d 896, 926 (9th Cir. 2012).

[97] ECF No. 24 at 10.

**IV.    Lee's motions for injunctive relief [ECF Nos. 29, 30]**

After Lee dismissed his lawyers in January 2022, he filed two motions for injunctive relief "against both [AH4R] and Boyd" asking the court to "forc[e] them to attend an early court hearing with jury in these matters."[98]  He contends that he is experiencing financial difficulties that he attributes to Boyd's continued disparagement in violation of the settlement agreement.[99]  He avers that he cares for his elderly mother, who requires medical treatment that he can no longer afford, and that he has developed his own medical conditions due to stress.[100]  He asks that I "bring this matter to an urgent jury trial" to avoid irreparable harm to his and his mother's health and wellbeing that they will suffer if this case is prolonged.[101]

A preliminary injunction is an "extraordinary" remedy that is "never awarded as of right."[102]  The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that to obtain an injunction, the plaintiff "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."[103]  The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a

---

[98] ECF No. 29 at 1; ECF No. 30 at 1.  These motions are substantively identical.  Lee filed a corrected image of his motion and its exhibits to comply with L.R. IA 10-3.  ECF No. 63.  I cite to the corrected version throughout this order.

[99] ECF No. 63 at 2.

[100] *Id.* at 4.

[101] *Id.* at 1.

[102] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[103] *Id.* at 20.

1    preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's

2    favor,' and the other two *Winter* factors are satisfied."[104]

3          Injunctions, preliminary or otherwise, are meant to provide a remedy for wrongful

4    conduct related to the claims as alleged in a complaint.  "When a plaintiff seeks injunctive relief

5    based on claims not pled in the complaint, the court does not have the authority to issue an

6    injunction."[105]  Because Lee's request for an immediate jury trial asks for relief distinct from the

7    relief requested in his complaint, an injunction is an unavailable remedy.  Lee also cannot show a

8    likelihood of success on the merits of his case if he were to go to trial right away.  He has not

9    produced any evidence to show that Boyd likely discriminated or retaliated against him or

10   breached his settlement agreement.  And discovery has been stayed in this case pending my

11   ruling on these motions to dismiss, so the parties have not had the opportunity to seek out

12   evidence that could prove or disprove Lee's claims.  Rushing to trial would not guarantee the

13   outcome Lee hopes—winning monetary relief—particularly in the absence of any evidentiary

14   support of his claims at this stage.  So I deny his motions for injunctive relief.[106]

15         However, now that AH4R's motion to compel and Boyd's motion to dismiss have been

16   resolved, this case should proceed in its ordinary course for the claims still remaining against

17   Boyd.  I thus grant Lee's motion to lift the discovery stay.[107]  But before discovery can

18

---

19   [104] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting
     *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

20   [105] *Pac. Rad. Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).

21   [106] Even if I were to liberally construe these pro se motions as ones to expedite the trial of this
     case, I would deny them for the same reasons: Lee's situation is not unique from other plaintiffs
22   (most desire an expedited resolution); he has not shown good cause to advance his case ahead of
     the hundreds of other civil cases on this judge's docket; and the Federal Rules of Civil Procedure
23   entitle Boyd to discovery before trial.

     [107] ECF No. 46.

commence, Boyd and Lee must participate in an early-neutral-evaluation (ENE) session as required by this district's Local Rule 16-6.  So I order Boyd and Lee to discuss and file a proper stipulation rescheduling their previously vacated ENE by June 14, 2022.

### Conclusion

IT IS THEREFORE ORDERED that American Homes 4 Rent's motion to compel arbitration **[ECF No. 6] is GRANTED**.  Lee's claims against American Homes 4 Rent are DISMISSED without prejudice to permit them to be arbitrated.  **The Clerk of Court is directed to TERMINATE American Homes 4 Rent as a defendant in this case.**

IT IS FURTHER ORDERED that Boyd Gaming Corporation's motion to dismiss **[ECF No. 20] is GRANTED in part and DENIED in part** as follows:

- Lee's discrimination claim against Boyd is DISMISSED with leave to amend. Lee may amend his complaint to allege facts supporting his claim that Boyd discriminated against him while he was employed there.

- Lee's claims for breach of good faith and fair dealing, intentional/negligent infliction of emotional distress, and interference with prospective business advantage are DISMISSED with leave to amen**d** consistent with this order.

- To the extent Boyd moves to dismiss Lee's retaliation claim, that portion of its motion is DENIED.

If Lee chooses to amend his complaint consistent with this order, **he must do so by June 30, 2022**.  Lee is advised that any amended complaint that is filed with the court must be complete in itself without reference to prior filings.  Any allegations, parties, or requests for relief from prior papers that are not carried forward and reasserted in the amended complaint no longer will be before the court and will be deemed abandoned.  If Lee does not amend his complaint by June

30, 2022, this case will proceed only on his retaliation and breach-of-contract claims against Boyd.

IT IS FURTHER ORDERED that Lee's motions for injunctive relief **[ECF Nos. 29, 30] are DENIED**.

IT IS FURTHER ORDERED that Lee's motion to lift the discovery stay **[ECF No. 46] is GRANTED**.

IT IS FURTHER ORDERED that the parties must file a stipulation to schedule an ENE **by June 14, 2022**.

_____
U.S. District Judge Jennifer A. Dorsey
May 31, 2022